UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

THOMAS GHELF AND TRICIA HANSEN,

CONSTANCE AND THOMAS KLEIN,

MAUREEN SOMMERFELD,

and

MISSISSIPPI SPORTS AND RECREATION, INCORPORATED,

Case No.

Plaintiffs,

vs.

TOWN OF WHEATLAND
a Wisconsin Municipal Corporation,

and

JAYNE BALLWAHN
Town Chairman of Wheatland,
in her individual and official capacity,

and

ROBERT STREETER
Former Town Chairman of Wheatland
in his individual and official capacity,

and

DON WILLIAMS
Former Town Supervisor of Wheatland
in his individual and official capacity,

and

Unknown Persons 1-10 who are Agents and Employees
of the Town of Wheatland and
Persons Acting in Active Concert or Participation with them,

and

VERNON COUNTY

and

KAREN DeLAP
Treasurer for Vernon County
in her individual and official capacity,

and

Unknown Persons 11-20 who are Agents and Employees
of Vernon County and
Persons Acting in Active Concert or Participation with them,

Defendants.

---

## COMPLAINT

---

Now come Plaintiffs, above captioned, by and through their attorneys Eminent Domain Services, LLC, by Andrew Weininger, and for their Complaint state and allege as follows:

2

1. This Complaint involves abutting properties owned by Plaintiffs in the Town of Wheatland, Vernon County, Wisconsin, where the Plaintiffs live and where they operate various businesses.

2. This is a 42 U.S.C. § 1983 case showing violations of the Plaintiffs' constitutional rights under the 1st, 5th and 14th Amendments to the United States Constitution and otherwise as set forth herein.

3. All of the Plaintiffs are related, and all of them live on abutting properties in the Town of Wheatland. One of the Plaintiffs, Thomas Ghelf, served on the Wheatland Town Board from 2007 to 2009. During Thomas Ghelf's tenure on the Town Board and continuing after it ended, members of the Wheatland Town Board and others, all acting under color of state law, initiated a campaign of harassment against Thomas Ghelf and the other Plaintiffs in a spiteful effort to shut down their business, take their property, and cause them emotional distress, frustration, and humiliation.

4. This Complaint seeks injunctive relief to enjoin the Defendants from foreclosing on the Plaintiffs' properties and from further efforts to continue to harass and harm Plaintiffs including but not limited to by: failing to provide standard emergency services at the property, organizing a community wide effort to make meritless claims against Plaintiffs in an effort to harass Plaintiffs, foreclosing on Plaintiffs' property through a property tax scheme where the taxes claimed were clearly invalid and the interest excessive, and asserting that there is a public road over the portion of the Plaintiffs' property where the Plaintiffs' private driveway is. This Complaint also seeks declaratory relief determining that the Property taxes and interest claimed due are invalid and there is no public road over the driveway area

3

of the Plaintiffs' property. This Complaint also seeks compensatory and punitive damages.

## PLAINTIFFS

5. Plaintiffs THOMAS GHELF and TRICIA HANSEN are adult residents of the State of Wisconsin.

6. Plaintiffs CONSTANCE and THOMAS KLEIN are adult residents of the State of Wisconsin.

7. Plaintiff MAUREEN SOMMERFELD is an adult resident of the State of Wisconsin.

8. Plaintiff MISSISSIPPI SPORTS AND RECREATION, INCORPORATED is a Wisconsin Corporation.

## DEFENDANTS

9. Defendant TOWN OF WHEATLAND is a Wisconsin Municipal Corporation.

10. Defendant JAYNE BALLWAHN is the Town Chairman of Wheatland and an adult resident of the State of Wisconsin.

11. Defendant ROBERT STREETER is a former Town Chairman of Wheatland and an adult resident of the State of Arizona.

12. Defendant DON WILLIAMS is a former Town Supervisor of Wheatland and an adult resident of the State of Wisconsin.

13. Defendants "Unknown Persons 1-10 who are Agents and Employees of the Town of Wheatland and Persons Acting in Active Concert or Participation with them"

were, at all times relevant herein, employees or agents of the Town of Wheatland who participated in the campaign of harassment and retaliation against the Plaintiffs as detailed below or at any other time. Any and all identifiable individuals, through discovery or otherwise, are sued in their individual and official capacities. At all times relevant hereto they acted under color of state law.

14. Defendant VERNON COUNTY is a Wisconsin unit of government.

15. Defendant KAREN DeLAP is the Treasurer for Vernon County.

16. Defendants "Unknown Persons 11-20 who are Agents and Employees of Vernon County and Persons Acting in Active Concert or Participation with them" were, at all times relevant herein, employees or agents of Vernon County who participated in the campaign of harassment and retaliation against the Plaintiffs as detailed below or at any other time. Any and all identifiable individuals, through discovery or otherwise, are sued in their individual and official capacities. At all times relevant hereto they acted under color of state law.

FACTS

17. This case involves a course of conduct spanning more than a decade by the Town of Wheatland and Vernon County, current and previous Wheatland Town Board members Jayne Ballwahn, Robert Streeter, Don Williams, Unknown Persons 1-10 who are Agents and Employees of the Town of Wheatland and Persons Acting in Active Concert or Participation with them, Karen DeLap, Vernon County Treasurer, and Unknown Persons 11-20 who are Agents and Employees of Vernon County and Persons Acting in Active Concert or Participation with them to harass the Plaintiffs and to constructively take property from Plaintiffs.

18. Plaintiffs Thomas Ghelf and Maureen Sommerfeld are brother and sister and jointly own Mississippi Sports and Recreation, Incorporated (hereinafter "MSR").

19. MSR owns property consisting of Vernon County Tax Parcel numbers 040-00273-0003, 040-00274-0006, 040-00314-0000, and 040-00267-0002 (collectively the "MSR Property").

20. The MSR Property is improved with a home where Plaintiff Thomas Ghelf and his wife Plaintiff Tricia Hansen live.

21. The MSR Property is also improved with an approximately 5,000 square foot bar and adult entertainment venue that operates under the name of Gunner's Bar and a boat landing along the Mississippi River with approximately 30 slips.

22. Plaintiff Thomas Ghelf and his wife Tricia Hansen own an approximately 5.6 acre property ("the Ghelf Property") that abuts the MSR Property. Plaintiffs Thomas Ghelf and Maureen Sommerfeld grew up in a home located on the Ghelf Property. Ms. Sommerfeld currently resides in that home. The Ghelf Property consists of Vernon County Tax Parcel numbers 040-00275-0001 and 040-00274-0003.

23. The Ghelf Property abuts Highway 35 and there is a driveway with a commercial driveway permit from Highway 35 through the Ghelf Property which provides access to the various properties. The private driveway travels through the Ghelf Property and provides access to the MSR Property. The private driveway then meanders through Plaintiffs' property and provides access to the bar, homes and cabins that are located on the MSR Property and other properties owned by Plaintiffs.

24. The driveway does not provide access to any properties not owned by the Plaintiffs.

25. Plaintiffs Constance and Thomas Klein own a 1.45 acre property with a single family residence where they reside with their two small children ("the Klein Property"). Constance is Thomas Ghelf's daughter. The Klein Property is accessed off of Highway 35. The Klein Property consists of Vernon County Tax Parcel number 040-00274-0003.

26. Some maps show the Klein Property as being located on a road called Pennel Lane. However, Pennel Lane is not a public road, rather it is the southern end of the private driveway that has always been maintained by the Ghelfs. In 1960 the DOT issued a residential driveway permit for the driveway on the Klein Property.

27. In 1998, Thomas Ghelf and Maureen Sommerfeld purchased the MSR Property from their father. At the time, the MSR Property included the boat landing and a bait shop, cabins and a house.

28. After purchasing the property, MSR installed approximately 50 campground sites with electrical services and converted the bait shop into a bar and restaurant which eventually grew to a size of about 5,000 square feet. In addition, Plaintiff Thomas Ghelf built his home on the MSR Property around 2010 and currently resides there today with his wife Tricia Hansen.

THE HARASSMENT CAMPAIGN

29. Thomas Ghelf and his brother, Ralph Ghelf, served on the Town of Wheatland Board from April 2007 to April 2009. During this time, Thomas Ghelf was a Town Supervisor, Defendant Robert Streeter was a Town Supervisor and Ralph Ghelf was the Town Chairman.

30. In April of 2009, there was an election for both seats held by Thomas and Ralph Ghelf. Robert Streeter ran against Ralph Ghelf for the position of Town Chairman. Don Williams ran against Thomas Ghelf for one of the two Town Supervisor Positions. Streeter defeated Ralph Ghelf for the position of Town Chairman and Williams and another candidate defeated Thomas Ghelf the two Town Supervisor positions.

31. In April of 2009, after Thomas and Ralph Ghelf lost the election, Streeter then became the Town Chairman and Williams became a Town Supervisor.

32. Beginning when Streeter was a Town Supervisor with Thomas Ghelf, and continuing after Streeter became Town Chairman and Williams became Town Supervisor, Streeter, Williams and the Town commenced a harassment campaign against Thomas Ghelf and the other Plaintiffs motivated by spite which consisted of a course of conduct that was calculated to force the Plaintiffs to cease the operation of their business or completely destroy its value through harassing use of complaints and ordinance violations, intimidation, overapplication of local laws and ordinances, failing to provide adequate and timely emergency services, an attempt to unilaterally declare that a driveway over the properties is a public road,

7

and the abusive application of property taxes apparently with the goal of taking the Plaintiffs' property through tax foreclosure.

33. The harassment campaign has effectuated a constructive taking of the Plaintiffs' property by making it impossible to pay the property taxes pursuant to which the Town of Wheatland, Vernon County and Vernon County Treasure Karen DeLap are now in the process of foreclosing on the properties for the tax liens. Vernon County Circuit Court Case No. 22CV74.

34. Over the years, Streeter, Williams and the Town have continued the harassment campaign against the Plaintiffs to impede Plaintiffs' business operations and spread negative and unfounded allegations and lies about Plaintiffs and Plaintiffs' business. This has resulted in Plaintiffs' business operations being severely impacted and led to Plaintiffs suffering severe financial damages.

35. As will be shown below, in conjunction with the harassment campaign severely impacting Plaintiffs' business operations, the Town of Wheatland has egregiously and drastically inflated Plaintiffs' properties taxes in one instance by nearly 16,000% from one year to the next. This has resulted in the Town generating an impossible to pay tax levy against the Plaintiffs, including by adding hundreds of thousands of dollars in interest with the end goal of foreclosing on the Property through the tax foreclosure process.

36. The harassment campaign has caused personal injury to the Plaintiffs, severe emotional distress, and lost property value and lost business value, and lost profits.

<u>Blackhawk Park Contract</u>

37. In 2007 and 2008, Thomas Ghelf sought to obtain a lease at Blackhawk Park. Blackhawk Park is a Vernon County Park and Campground. Ghelf was seeking to run the campground, marina and concession stand through a contract with Vernon County. Acting out of spite, Defendant Streeter attempted to interfere and stop Ghelf from obtaining this contract while he was serving on the Town of Wheatland Board. Williams assisted Streeter during this time, but was not elected to the Town of Wheatland Board until April of 2009.

8

38. Streeter and Williams led a group of Blackhawk Park campers and attended every meeting of the land and conservation committee for Vernon County from whom Ghelf was attempting to get the contract. Similar to their efforts to stop MSR from opening a bar, restaurant and banquet hall as will be discussed below, Streeter, Williams and their group made repeated complaints to the conservation committee and appeared at every meeting to try to stop Ghelf from receiving this contract.

39. Ultimately, in 2008, Ghelf was awarded the contract in spite of the coordinated efforts of Streeter and Williams. Ghelf was told by the Vernon County Corporation Counsel, Greg Lundee, that he was the strongest candidate and awarded him the contract despite the efforts of Streeter, Williams and the campground association.

<u>Bar, Restaurant and Banquet Hall</u>

40. Beginning in 2008, Streeter and Williams began organizing a community effort to bring repeated complaints against Plaintiffs in an effort to harass and intimidate MSR, Ghelf and Sommerfeld. Part of the motivation was spite and part was to prevent Ghelf and Sommerfeld from realizing their plans to open a bar, restaurant and banquet hall on the MSR Property.

41. Defendants Streeter and Williams formed a group called De Soto Area Business Partners and orchestrated a coordinated effort to generate daily complaints in the form of phone calls to the Department of Commerce with regards to the construction of the bar, restaurant and banquet hall.

42. The efforts of Streeter and Williams involved repeated daily complaints to the Department of Commerce for months in an effort to harass and intimidate Plaintiffs into discontinuing with their plans.

43. The repeated complaints related to "nitpicking" all aspects of the construction such as electrical work, construction, and handicap accessibility when Plaintiffs had all the necessary permits in order to complete the work and had performed the work in a compliant manner.

44. As a result of the coordinated efforts from Streeter and Williams, an inspector from the Department of Commerce came in after construction was completed and

ordered that the electrical services to the property be shut off. The power was shut off to the bar, restaurant and banquet hall, as well as to the campground, the home located on the Ghelf Property and the home located on the MSR Property.

45. The electrical services were shut off during the summer of 2009 just prior to the July 4th holiday weekend and around the time of the planned grand opening. The interruption resulted in a significant financial loss caused by loss of business during that weekend, from reputational damage, and also from losing a scheduled wedding in the banquet hall.

46. After being shut down for approximately a week when power was shut off to the bar, restaurant, and banquet hall, the lead inspector for the Department of Commerce visited the MSR Property and determined that there were no grounds to shut off the electrical service and the services were restored. After an inspection, the lead inspector informed Thomas Ghelf that all of the work was well done and up to code.

<u>Adult Entertainment Venue</u>

47. In August of 2009, MSR decided to convert the bar, restaurant and banquet facility to an adult entertainment venue, called Gunner's Bar and Girls ("Gunner's").

48. Streeter, Williams and the De Soto Area Business Association then began filing baseless complaints with the Vernon County Sheriff's Department and the Wisconsin Department of Justice ("DOJ") against MSR and Ghelf alleging without evidence that illegal drugs and prostitution were occuring at the adult entertainment venue.

49. Vernon County and the Wisconsin Department of Justice then began an investigation in September of 2009. Both agencies sent in undercover agents to investigate the complaints from Streeter, Williams and the De Soto Area Business Association as to the alleged illegal activity.

50. On or about December 18, 2009, the DOJ investigator told Ghelf that the adult entertainment center operated by MSR and Ghelf was the cleanest operation that he had seen, that they were done visiting the bar and wished Ghelf good luck.

51. On December 18, 2009, Special Agent Darren A. Hynig from the Wisconsin DOJ sent a message to Scott Bjekos, the investigator for the Vernon County Sheriff's department that based on Agent Hynig's training and experience there was no evidence that Ghelf, Sommerfeld and Gunner's were in any way engaged in the alleged illegal activity.

52. In spite of Special Agent Hynig concluding that no illegal activity was taking place at the adult entertainment venue on the MSR property, the Vernon County Sheriff's Department executed a raid on the bar that night arresting Thomas Ghelf and nine women who were working at the adult entertainment venue. The raid was undertaken in spite of being informed by the Wisconsin DOJ that there was no evidence of wrongdoing. The Sheriff's Department claimed to be looking for evidence of drugs and prostitution but did not find anything.

53. When the Sheriff's Department could not find any evidence of illegal drugs or prostition, Ghelf and nine female MSR performers were arrested and booked in Vernon County jail pursuant to a claimed ordinance violation related to the adult entertainment center.

54. The claimed ordinance violation was Vernon County Ordinance § 42-3, entitled Pornographic Material and Performances, which was enacted in 1978. This ordinance predated the Wisconsin Supreme Court's decision in *State Ex Rel. Teunas v. Kenosha County,* 142 Wis. 2d 498, 418 N.W.2d 833 (1988), holding that Wisconsin counties lacked the constitutional authority to enact obscenity ordinances.

55. That means that at the time Vernon County instituted the raid and arrested Ghelf and nine of his employees, the ordinance that they used to arrest the individuals was void and essentially not in existence. This was after they had already been informed by the Wisconsin DOJ that there was no evidence of drugs or prostitution occurring on the MSR Property.

56. Thus, the Vernon County Sheriff's department arrested Ghelf and nine women pursuant to an obscenity ordinance that had no legal existence.

57. Ultimately, the club reopened and Vernon County and/or the Town of Wheatland or their insurance provider paid a settlement to MSR and Ghelf.

58. The Town of Wheatland has continued to target Plaintiffs and in 2020 the Town passed an ordinance banning "Lewd or Obscene" conduct in the Town. https://www.town-of-wheatland.com/Ordinances/2020-01_LEWD_OR_OBSCEN E_CONDUCT_ORDINANCE_2.pdf The ordinance is likely unconstitutional as an excessive burden on first amendment expression and for similar reasons to those set forth in *State Ex Rel. Teunas v. Kenosha County,* 142 Wis. 2d 498, 418 N.W.2d 833 (1988).

<u>Failure to Properly Respond to Emergency Service Calls</u>

59. Another element of the harassment campaign is emergency services either refusing to respond to requests for help at the Plaintiffs' property, greatly delaying their response, or refusing to take appropriate action after responding.

60. On February 24, 2012, Chuck Sanborn, Thomas Ghelf and Maureen Sommerfeld's brother-in-law, suffered a heart attack at the Property. Mr. Sanborn's daughter immediately called emergency services when Mr. Sanborn began to have a health emergency. The Town of Wheatland first responders did not respond to the call for help. Vernon County emergency services took more than 45 minutes to an hour before responding. Mr. Sanborn passed away prior to the emergency responders arriving.

61. At Chuck Sanborn's wake, Don Stokke, Jr., the Fire Chief for the Town of Wheatland, told Mr. Sanborn's wife that the reason the Town of Wheatland first responders did not respond was because they believed that it was Plaintiff Thomas Ghelf who was suffering the medical issue.

62. Thereafter, numerous people told Mr. Sanborn's daughter that the emergency responders thought it was Plaintiff Thomas Ghelf who was suffering the medical

issue and because the emergency responders believed it was Mr. Ghelf and not Mr. Sanborn who was in distress, "they let the pagers run" instead of promptly responding to the call for help.

63. In January of 2016, some of the patrons at Gunner's became unruly. Ghelf asked the unruly patrons to leave but the unruly patrons refused to leave. Sommerfeld then called the Vernon County Sheriff's Department, but the Vernon County Sheriff's Department failed to respond promptly.

64. Plaintiff Thomas Ghelf and Plaintiff Maureen Sommerfeld were then beat up by the unruly patrons after the Vernon County Sheriff's Department failed to promptly respond to Sommerfeld's calls for assistance. As a result of the Vernon County Sheriff's Department's failure to promptly respond, Plaintiff Maureen Sommerfeld suffered a severe brain injury and internal bleeding.

65. After approximately 60 to 90 minutes, the Vernon County Sheriff's Department finally responded but when they did respond, they refused to arrest the unruly patrons or hold them in any way accountable.

66. In 2016, the Vernon County Sheriff's Department began informing Ghelf that if Ghelf or anyone at the adult entertainment venue called the Sheriff's Department for assistance, then the Sheriff's Department would ticket Ghelf for disorderly conduct if the Sheriff's Department was going to ticket someone else.

67. This has seriously impacted the business because it is well known that the Sheriff's Department will not hold people accountable for breaking the law at the MSR Property. This creates an undesirable and dangerous environment at the Property because whenever a situation arises where law enforcement or emergency medical services are required, Plaintiffs are faced with the decision of calling for help and having Thomas Ghelf issued a ticket for disorderly conduct, or not calling for help and therefore not receiving the required assistance.

68. When other similarly situated residents and businesses of the Town of Wheatland call emergency services, the appropriate emergency services respond in a prompt and appropriate manner.

The Harassing and Retaliatory Property Tax Assessments

69. At the same time that the bar began operating as an adult entertainment venue, the Town of Wheatland increased the property tax assessment amounts for parcels owned by MSR. MSR began operating the adult entertainment venue club in 2009 and, as is shown below, the Town radically increased the 2009 taxes for MSR following this.

70. As shown below, the assessed value for the boat landing parcel in the year the adult entertainment venue opened increased from $10,200 to $1,440,800 or an increase of 14,025.5%. The amount of taxes owed on this parcel increased from $205.78 to $33,067.17, an increase of 15,969.2%.

| Year | Assessed Land Value | Assessed Improved Value | Gross Tax |
|------|--------------------|------------------------|-----------|
| 2007 | $6900 | $0 | $142.47 |
| 2008 | $10,200 | $0 | $205.78 |
| 2009 | $1,240,800 | $200,000 | $33,067.17 |
| 2010 | $1,240,800 | $200,000 | $32,081.89 |
| 2011 | $206,800 | $200,000 | $9,766.20 |
| 2012 | $150,000 | $0 | $3,642.97 |
| 2013 | $150,000 | $0 | $3,622.26 |
| 2014 | $150,000 | $0 | $3,154.13 |
| 2015 | $97,500 | $0 | $1,105.07 |

71. As shown below, in the year the adult entertainment venue opened, the assessed value of the parcel that has the adult entertainment venue located on it increased from $320,600 to $588,400 or an increase of 83.53%. The amount of taxes owed on this parcel increased from $6,434.38 to $12,647.83, an increase of 96.56%.

14

| Year | Assessed Land Value | Assessed Improved Value | Gross Tax |
|---|---|---|---|
| 2007 | $22,800 | $297,600 | $3,071.18 |
| 2008 | $23,000 | $297,600 | $6,434.38 |
| 2009 | $113,000 | $475,400 | $12,647.83 |
| 2010 | $113,000 | $475,400 | $13,057.45 |
| 2011 | $113,000 | $475,400 | $13,090.37 |
| 2012 | $113,000 | $384,000 | $11,132.50 |
| 2013 | $113,000 | $384,000 | $11,028.50 |
| 2014 | $113,000 | $384,000 | $10,377.30 |
| 2015 | $56,700 | $462,000 | $11,678.52 |
| 2016 | $56,700 | $462,000 | $10,760.95 |
| 2017 | $56,700 | $462,000 | $10,933.47 |

72. At the 2009 Town of Wheatland Open Book Meeting, Thomas Ghelf appeared on behalf of MSR to challenge the real estate tax assessment for the parcels owned by MSR including the above parcels. Mr. Ghelf spoke with the Town of Wheatland Assessor at that time, Charlotte Johnson. After Thomas Ghelf spoke with Ms. Johnson, Ms. Johnson stated a review would need to be completed regarding Mr. Ghelf's concerns as to MSR's real estate tax assessment.

73. Immediately after the 2009 Town of Wheatland Open Book Meeting, a Town of Wheatland Board of Review Meeting was opened and Mr. Ghelf, on behalf of MSR, objected before the Board of Review that the tax assessments were incorrect in that they were far too high.

74. The Board of Review stated to Mr. Ghelf that nothing would be done that day, and another Board of Review would be set-up to address Mr. Ghelf's concerns over the

real estate tax assessment. The Board of Review was then concluded with no action being taken with regards to Mr. Ghelf's objections to the MSR real estate tax assessments. No date was ever set for the next Board of Review meeting.

75. A few weeks after the Open Book and Board of Review Meeting concluded, Town Clerk Judith Wood contacted Town of Wheatland Chairman Bob Streeter via telephone to ask when she should post the necessary notices for the Board of Review Hearing to address MSR's objections to the real estate taxes. It was Ms. Wood's job, as Clerk, to send out the appropriate notices. Mr. Streeter informed Ms. Wood that he would decide when, and if, this next Board of Review would take place.

76. In October of 2009, Ms. Wood resigned as Town Clerk for the Town of Wheatland due to various actions by Mr. Streeter as Town Chairman for the Town of Wheatland.

77. Prior to resigning, Ms. Wood did not set up a second Board of Review Meeting to address MSR's objections to the 2009 tax assessment.

78. The Town of Wheatland never reconvened the 2009 Board of Review Meeting to address MSR's objections to the 2009 tax assessment. No Board of Review was ever held as a result of the adjourned hearing and as a result, no Board of Review ever took place. Assessor Charlotte Johnson did not reassess the property, did not provide new assessments, and never met with Thomas Ghelf or any other MSR representative. No records of a 2009 Board of Review Meeting were ever provided to MSR or its representatives.

79. In 2010, the Town of Wheatland never provided to MSR or its representatives a Notice of Open Book, other notices related to property taxes, or tax bills. Thomas Ghelf attended the Open Book on behalf of MSR and once again objected to the assessments. MSR never received any notice of a Board of Review and the objection was never presented to the Board of Review. Following a discussion, Assessor Charlotte Johnson assured Thomas Ghelf that she would set up an appointment to view the property and change the assessment. She further stated that she could go back one year to revalue the property and that the appraisal would be done. However, she never reassessed the property for 2009 or 2010.

16

80. In 2011, MSR and its representatives did not receive any notices regarding the real estate tax assessments or tax bills for any parcels owned by MSR.

81. In 2012, Maureen Sommerfeld appeared at the Open Book on behalf of MSR along with Merwyn Cunningham. At the Open Book, Assessor Charlotte Johnson informed Ms. Sommerfeld that she would be willing to reduce the assessment on real estate owned by MSR for 2011 and that while she couldn't adjust anything more than a year old, the Board of Review could. Ms. Johnson informed Ms. Sommerfeld and Mr. Cunningham that she was willing to recommend to the Board of Review that they reduce the real estate assessments for MSR for the years of 2009 and 2010 as well.

82. Ms. Johnson informed Ms. Sommerfeld that her assessments were based upon unreliable maps and was incorrectly under the assumption that some of the land consisted of forest and riverfront development.

83. Ms. Johnson also stated that because only one member of the Town Board was present at the Open Book, that no Board of Review would take place that day.

84. Ms. Johnson suggested to Ms. Sommerfeld that she talk to the Town Clerk, Kim Martinson, to set up a meeting with the Board to review the 2009, 2010, 2011, and 2012 real estate taxes for MSR.

85. Ms. Johnson informed Ms. Sommerfeld that MSR would be able to present evidence for a reduction in the tax assessments, and that she would be willing to support a reduction in the real estate tax assessment based upon her reliance on the erroneous information regarding the real estate owned by MSR.

86. Ms. Johnson also informed Mr. Cunningham and Ms. Sommerfeld that the Town Treasurer and Town Secretary should have notified both the Town Board and the property owner as to the reason for the large increases of MSR's real estate tax assessments and this was not done.

87. Ms. Johnson also informed Ms. Sommerfeld that she had told Chairman Robert Streeter that the assessments on the MSR properties were not correct.

88. After being told that the 2012 Board of Review could not happen that day due to the lack of Town of Wheatland board members present, Mr. Cunningham and Ms. Sommerfeld left the meeting.

89. In 2012, MSR and its representatives did not receive any notices regarding the real estate tax assessments or tax bills for any parcels owned by MSR.

90. In 2013, MSR and its representatives did not receive any notices regarding the real estate tax assessments for any parcels owned by MSR.

91. In 2014, Ms. Sommerfeld and Mr. Cunningham both attended the Open Book meeting. Assessor Johnson was no longer the Town of Wheatland assessor and the new assessor informed Ms. Sommerfeld and Mr. Cunningham that he would adjust the real estate taxes in the Fall of that year when the leaves were no longer on the trees to get a better inspection of the property and that this was a better way to handle the assessment challenge as there were not enough Town Board members present to have a Board of Review that day and no Board of Review hearing was held.

92. The Town of Wheatland Assessor, Charlotte Johnson, had her license subsequently revoked by the Wisconsin Department of Revenue in 2014. As a result of Ms. Johnson's work, the Town of Wheatland was required to pay funds back to the Wisconsin Department of Revenue.

93. During a May 27th, 2014 bankruptcy hearing before Judge Catherine J. Furay in the United State Bankruptcy Court (Case No. 13-10465-11) for the the Western District of Wisconsin, Judge Furay observed that "[t]here was scant explanation or basis for the actual valuation by Ms. Johnson." Judge Furay continued:

"I find that the testimony of Ms. Johnson to, at best, prevaricate a great deal. I find her testimony not to be credible. I find that the values that she established were anything but well-reasoned or based on fact. In fact, the best I can tell, her million four or million five hundred dollar value was nothing more than an arbitrary excessive increase in valuation without any basis in fact.

As noted, whether this was in a floodplain, whether it was buildable, whether there were appropriate zoning available or there were zoning restrictions or other access restrictions could easily have been verified by Ms. Johnson independently and were not. I think there is likely palpable error in the valuation that was established, and that the valuation was radically out of proportion with any reasonable value.

There were no comparables used, no other objective measures for the valuation. [. . .]"

94. In spite of the fact that the Assessor admitted that the assessments against MSR's property were incorrect, the Town of Wheatland, Vernon County and Vernon County Treasurer Karen DeLap have not taken any steps to correct the assessments and in fact Vernon County and Vernon County Treasurer Karen DeLap are in the process of attempting to foreclose on MSR's Property for unpaid taxes while claiming approximately $202,960.55 in unpaid property taxes and approximately $205,681.87 in interest. Vernon County Circuit Court Case No. 22CV74. This includes, but is not limited to, the following claimed taxes and interest being due.

| Parcel | Year | Amount Claimed for Taxes and Interest |
| --- | --- | --- |
| 0002 (Boat Landing) | 2009 | $77,978.60 |
| 0002 (Boat Landing) | 2010 | $76,675.72 |
| 0002 (Boat Landing) | 2011 | $20,491 |
| 0006 (Bar) | 2009 | $12,398.72 |
| 0006 (Bar) | 2010 | $31,207.31 |
| 0006 (Bar) | 2011 | $29,715.14 |
| 0006 (Bar) | 2012 | $23,934.88 |
| 0006 (Bar) | 2013 | $22,387.86 |

95. As part of the tax lien foreclosure action filed by Vernon County, there was a ninety day redemption period and during this period MSR attempted to work out a compromise agreement with the County to address these issues. The County was not interested in reaching a compromise and the redemption period closed on September 14, 2022. The Vernon County Circuit Court has scheduled a final hearing regarding the property tax foreclosure for October 17, 2022.

96. The County has refused to address or correct these clearly erroneous property tax assessments in spite of the fact that the Assessor herself acknowledged they were wrong and had her license revoked. For example, in 2008, the taxes for the Boat Landing (Parcel 0002), were $205.78. Now, the Town of Wheatland and Vernon County seek $77,978.60 for the 2009 taxes including interest. This is an increase of $77,772.82 or an increase of 37,794.2%.

97. In 2008, the taxes for the Bar (Parcel 0006), were $6,434.38. Now the Town of Wheatland and Vernon County seek $31,207.31 for the tax year of 2010 including interest. This is an increase of $24,772.93 or an increase of 385%.

98. Once again, the excessive and inaccurate increase in property taxes occurred beginning with the 2009 tax year, the same year that MSR began operating an adult entertainment venue at the property and constitutes part of the campaign of harassment and intimidation which is the subject of this complaint.

Harassment by Claiming that the Plaintiffs' Driveway is a Public Road

99. Recently, as part of the ongoing campaign of harassment, the Town of Wheatland has begun to claim that a private driveway that is located on the Plaintiffs' properties is actually a public road. Here is an overview of the property and the driveway is shown by the orange line.



100. Although the driveway is referred to on some maps as Ghelf Road, the driveway is not a public road. At the northern driveway entrance there is a road sign specifically designating that Ghelf Road is private. On some maps the portion of the driveway to the south is designated as Pennel Lane. This is the portion of the driveway that provides access to Constance and Thomas Klein's home.

101. In 2018, Thomas Ghelf solicited guidance from the Vernon County Sheriff's Department as to whether or not the driveway was a private road. Sargent Bruce Olson of the Vernon County Sheriff's Department performed an investigation and determined that the driveway was not a public road. Sargent Olson memorialized his investigation in a letter dated September 18th, 2018 which is attached hereto as Exhibit A and incorporated herein by reference.

102. Since owning the property, the Ghelfs have always maintained the driveway. The Ghelfs have been responsible for all maintenance including adding gravel, grading, and plowing the portions of the driveway including the portions that are designated as Ghelf Road and Pennel Lane. During this time, neither the Town of Wheatland nor Vernon County have ever maintained the driveway at all let alone maintained it regularly as they have maintained other roads in the Town.

103. In addition, the Wisconsin DOT issued the Ghelfs driveway permits for both of their driveway entrances along Highway 35 in the 1960s clearly indicating that it is a private driveway.

104. The only time that the Town of Wheatland has driven on the private driveway was during December of 2021. At this time, a snow plow entered the Ghelfs' property at the southern driveway entrance in spite of the fact that the driveway

had already been plowed. In doing so, the Town's snow plow truck traveled at an excessive speed and struck Plaintiff Thomas Klein, who was driving a utility terrain vehicle, causing injury.

105.    The Town of Wheatland is also claiming that it owns right of way that is significantly wider than the driveway. The septic system for Constance and Thomas Klein's home is actually located in the area that the Town now claims is public right of way.

106.    The private driveway that the Town claims to be a public road provides access only to properties owned by the Plaintiffs and no other properties are accessed via the private driveway.

107.    On July 18, 2022, counsel for the Town of Wheatland, who at all times was acting in his official capacity and pursuant to an official Town policy, sent the following letter addressed to Thomas L. Ghelf, President of Mississippi Sports and Recreation, Inc.

Dear Mr. Ghelf:

On behalf of the Town of Wheatland, this is to advise you that the Town in cooperation with the Vernon County Sherriff's [sic] Office is in the process of changing the addresses on those properties addressed on Ghelf Rd to being addressed on Pennel Ln.

The County Surveyor, Laurence Johns, plans to monument the Public Right-of-Way the first week of August, 2022. This will enable you and others to know exactly the limits of the Public Right-of-Way. State Statute prohibits interfering with Surveys and destruction of monuments. See Sections 59.73 and 59.74 Wis Stats.

The current address for the business, Gunners, is E870 Ghelf Rd and will be changed to E870 Pennel Ln (Tax Parcel 040-00275-0006). Since E870 Ghelf Rd is the current address for two structures, Gunner's and Tom Ghelf's house, Dispatch is assigning a new address of E886 Pennel Ln for the house (Tax Parcel 040-00314-0000). This is necessary to comply with a uniform system of naming roads and numbering buildings in accordance with Vernon County Ordinance #2007-3 (Section 56-26 to 56-39).

Also the cabins which are also located on Tax Parcel 040-00274-0006 will be assigned the address of E893 Pennel Ln. Each cabin should also be separately numbers as 1, 2, 3 etc.

These changes are in accordance with County Ordinance and Town Ordinance for purpose of Public Safety and especially the providing of emergency services.

You will be notified of the exact date of the changes at the De Soto Post Office after the new address signs are delivered. Also the Town may impose a charge for the new signs.

If you have any questions, you may contact me. Thank you.

Very truly yours,
LAWYERS AT WORK, LLC

Patrick J. Houlihan

108.    By letter dated July 19, 2022, counsel for Town of Wheatland, who at all times was acting in his official capacity and pursuant to an official City policy, sent the following letter to Constance M. Ghelf and Thomas F. Klein.

Dear Ms. Ghelf and Mr. Klein:

On behalf of the Town of Wheatland, this is to advise you that the Town in cooperation with the Vernon County Sherriff's [sic] Office is in the process of changing the addresses on those properties addressed on Ghelf Rd to being addressed on Pennel Ln.

The Town of Wheatland validated Pennel Lane, as you are aware, for the entire length as a Town Road in 2020. The Resolution Validating the Town Road to be known as Pennel Lane as a Public Right-of-Way was recorded with the Vernon County Register of Deeds on August 6, 2020 as Document Number 515284. Enclosed is a depiction of Pennel Ln, what was formerly known as Ghelf Rd and Pennel Ln.

You received notice in February of 2021 regarding the obstruction of Pennel Lane of various violations of Town Ordinances and State Statutes.

This past Saturday I traveled to your property and observed several, what appear to be, fifty-gallon barrels obstructing the Public Right-of-Way next to your property, along with a trailer on the Public Right-of-Way. Also no trespass signs appear to be on the Public Right-of-Way.

These obstructions not only prevent the Town from maintaining a Public Right-of-Way but prevent emergency vehicles form [sic] providing emergency services.

The Town of Wheatland may charge or levy a special assessment against your property for the necessary costs of maintaining Pennel Lane as well as legal services, security costs, and other necessary expenses to make this Public Right-of-Way passable for vehicles. These costs would be included with your Real Estate Tax Bill and are not payable in installments.

If you currently have a mortgage, I doubt if your mortgage holder would appreciate the levy of these charges or assessment against your property.

I understand you may have a concern with your septic system. Although the Town looked into this concern before, the Vernon County Sanitation Administration intends to review your concern this week.

The County Surveyor, Laurence Johns, plans to monument the Public Right-of-Way the first week of August, 2022. This will enable you and others to know exactly the limits of the Public Right-of-Way. Please do not interfere with him. This will benefit all concerned.

Therefore, as previously advised, remove immediately the obstructions. If no, you may be liable not only for the costs of removal, as well as fines, plus legal fees incurred by the town.

In working with the DOT, improvements need to be made not only to Pennel Ln, but also the entrances to newly improved State Highway 35 [sic]

If you have any questions, you may contact me. Thank you.
Very truly yours,
LAWYERS AT WORK, LLC

Patrick J. Houlihan

109.　By letter dated July 19, 2022, counsel for Town of Wheatland, who at all times was acting in his official capacity and pursuant to an official Town policy, sent the following letter to Thomas Ghelf.

Dear Mr. Ghelf:

On behalf of the Town of Wheatland, this is to advise you that the Town in cooperation with the Vernon County Sherriff's [sic] Office is in the process of changing the addresses on those properties addressed on Ghelf Rd to being addressed on Pennel Ln.

The County Surveyor, Laurence Johns, plans to monument the Public Right-of-Way the first week of August, 2022. This will enable you and others to know exactly the limits of the Public Right-of-Way. State Statute prohibits interfering with Surveys and destruction of monuments. See Sections 59.73 and 59.74 Wis Stats.

The current addresses at E882 Ghelf Rd and E888 Ghelf Rd will change to E882 Pennel Ln and E888 Pennel Ln. This is necessary in accordance with a uniform system of naming road and numbering building.

These changes are in accordance with County Ordinance and Town Ordinance for purpose [sic] of Public Safety and especially the providing of emergency services.

You will be notified of the exact date of the changes at the De Soto Post Office after the new address signs are delivered.

If you have any questions, please do not hesitate to contact us. Thank you.

Very truly yours,
LAWYERS AT WORK, LLC

Patrick J. Houlihan

110.  As previously mentioned, at no point has the Town or the County maintained any portion of the private drive called Ghelf Road or Pennel Lane. In addition, the Town has not provided the Ghelfs with documentation indicating that any portion of the private driveway is a public road. The only documentation included with any of the three above referenced letters was an overhead map similar to the one shown in paragraph 99, above.

111.  The Town's position appears to be that the Town took title to the purported road over the Plaintiffs' property by unilaterally claiming the road on the mileage plats that the Town occasionally generated over the years as part of claiming gas tax funds from the State.

112.    In relation to all allegations in this complaint, the Town of Wheatland and Vernon County have at all times acted pursuant to an official policy and under color of state law and have violated Plaintiffs' 1st Amendment right to free speech, deprived the Plaintiffs of their 5th Amendment rights to not have their property taken without due process or the payment of just compensation, their 14th Amendment rights to substantive due process, and their 14th Amendment right to equal protection.

113.    The Town of Wheatland and Vernon County's course of conduct pled above was undertaken pursuant to a decision or decisions or a policy or policies adopted by the official or officials with final policymaking or decision making authority and responsible for making decisions or policy.

114.    In relation to all allegations in this complaint, Jayne Ballwahn, Robert Streeter, Don Williams, Unknown Persons 1-10 who are Agents and Employees of the Town of Wheatland and Persons Acting in Active Concert or Participation with them, Karen DeLap, and Unknown Persons 11-20 who are Agents and Employees of Vernon County and Persons Acting in Active Concert or Participation with them, have at all times acted pursuant to an official policy and under color of state law and have violated Plaintiffs' 1st amendment right to free speech, deprived the Plaintiffs of their 5th Amendment rights to not have their property taken without due process or the payment of just compensation, their 14th Amendment rights to substantive due process, and their 14th Amendment right to equal protection.

115.    The course of conduct of Jayne Ballwahn, Robert Streeter, Don Williams, Unknown Persons 1-10 who are Agents and Employees of the Town of Wheatland

and Persons Acting in Active Concert or Participation with them, Karen DeLap, and Unknown Persons 11-20 who are Agents and Employees of Vernon County and Persons Acting in Active Concert or Participation with them, pled above, was undertaken pursuant to a decision or decisions or a policy or policies adopted by the official or officials with final policymaking or decision making authority and responsible for making decisions or policy.

## JURISDICTION & JURY DEMAND

116.    This Court has jurisdiction over this action pursuant to Title 28 U.S.C. §§ 1331 and 1343(3) in that the controversy arises under the United States Constitution, and under 42 U.S.C. § 1983 and 28 U.S.C. §§ 2201 and 2202. This Court has authority to award attorneys fees and litigation expenses pursuant to 42 U.S.C. § 1988. Plaintiffs further invoke the supplemental jurisdiction of this Court under 28 U.S.C. § 1367 (a) to hear and adjudicate state law claims to the extent that any are intertwined with the questions presented in this case. Each and all of the acts (or threats of acts) alleged herein were done by Defendant, or their officers, agents, and employees, under color and pretense of the statutes, ordinances, regulations, customs and usages of state law and pursuant to an official policy.  The Plaintiffs request a jury.

CAUSES OF ACTION

42 U.S.C. Section 1983: Violation of the 5th Amendment and 14th Amendments to the
United States Constitution - Constructive Taking

117.   Each of the allegations above is restated and re-pled as though fully set forth
herein.

118.   The Defendants, acting under color of state law and pursuant to an official
policy, have constructively taken Plaintiffs' property, without a public purpose and
without compensation. This is a violation of the 5th Amendment and the 14th
Amendment to the United States Constitution because it is a taking executed by
engaging in a course of conduct that destroys the Plaintiffs' property by over
assessing the Plaintiffs' properties so as to generate a large property tax bill while
simultaneously engaging in a harassment campaign that caused severe emotional
distress and reduced the Plaintiffs' ability to generate income thereby making it
impossible to pay the property taxes.  The property tax scheme was part of the
unlawful course of conduct when, as pled above, the Town of Wheatland failed to
provide proper notices and repeatedly promised to remedy the excessive and
inaccurate valuations and tax levies but then failed to ever follow through on those
promises and is now foreclosing the tax lien.

119.   The Defendants, acting pursuant to official policy, by the course of conduct
described above, have constructively taken the Plaintiffs' property without
compensation in violation of the 5th Amendment and the 14th Amendment to the
United States Constitution.

<u>42 U.S.C. Section 1983: Violation of the 5th Amendment and 14th Amendments to the
United States Constitution - Taking of Road</u>

123.    Each of the allegations above is restated and re-pled as though fully set forth herein.

124.    The Defendants, acting under color of state law and pursuant to an official policy, by asserting that Plaintiffs' private driveway is a public road without a public purpose and without compensation, is attempting to take title to part of the Plaintiffs' property in violation of the 5th Amendment and the 14th Amendment to the United States Constitution by taking a road over the Plaintiffs' property where the Plaintiffs' private driveway is located.

125.    The asserted taking of Plaintiffs' private driveway is not for a public purpose, rather it is part of the ongoing harassment campaign against the Plaintiffs.

<u>42 U.S.C. § 1983: Violation of the 1st Amendment and 14th Amendment to the United States Constitution - Violation of Free Speech</u>

126.  Each of the allegations above is restated and re-pled as though fully set forth herein.

127.  Plaintiffs make a claim under 42 U.S.C. § 1983 for violation of the First Amendment to the United States Constitution.

128.  As pled above, Plaintiffs exercised their right to free speech by opening and operating an adult entertainment venue on its property.

129.  As pled above, the Defendants retaliated against Plaintiffs. The retaliation included, but was not limited to, an organized campaign of harassment and intimidation by the Defendants calculated to shut the business down by overburdening it with regulatory actions, by refusing to properly respond to emergency calls requesting help at the property, by egregiously raising MSR's property taxes and then seeking to foreclose on the MSR Property while seeking recovery of tens of thousands of dollar in interest, and by claiming a private driveway on Plaintiffs' properties is actually a public road.

130.  As a result of the Defendants' conduct, Plaintiffs were damaged.

<u>42 U.S.C. Section 1983: Violation of the 14th Amendment to the United States</u>
<u>Constitution - Class on One Equal Protection</u>

131.   Each of the allegations above is restated and re-pled as though fully set forth
herein.

132.   The Defendants, acting under color of state law and pursuant to an official
policy, by engaging in the harassment campaign outlined herein, in particular the
failure to appropriately provide emergency services, amounts to a spiteful effort to
"get" the Plaintiffs for reasons wholly unrelated to any legitimate state objective
and therefore violates the 14th Amendment equal protection guarantee.

133.   Other residents of the Town of Wheaton receive prompt and appropriate
responses when they call emergency services.

<u>42 U.S.C. Section 1983: Violation of the 14th Amendment to the United States</u>
<u>Constitution - Substantive Due Process</u>

134.    Each of the allegations above is restated and re-pled as though fully set forth herein.

135.    The Defendants, acting under color of state law and pursuant to an official policy, by engaging in the harassment campaign outlined herein, in particular the failure to appropriately provide emergency services and constructively take two parcels of the MSR Property, shocks the conscience and therefore violates the 14th Amendment substantive due process guarantee.

<u>28 U.S.C. § 2201:  Declaratory Relief</u>

136.    Each of the allegations above is restated and re-pled as though fully set forth herein.

137.    As pled above, the Town of Wheatland is asserting that there is a public road where the Plaintiffs' driveway is located.

138.    The Plaintiffs request that this Court declare that the private driveway, including any portions designated as Pennel Lane and Ghelf Road, is a private driveway and not a public road.

139.    As pled above, the Town of Wheatland and other Defendants are asserting that the Plaintiffs own an excessive and inaccurate amount of property taxes and interest.

140.    The Plaintiffs request that this Court declare the proper and correct amount of property taxes and interest.

WHEREFORE, the Plaintiffs pray that this Court grant the following declaratory and injunctive relief and damages:

(a) A declaratory judgment that there is no public road on the Plaintiffs' property.

(b) A declaratory judgment that the MSR Property taxes and interest claimed by the Town of Wheatland and Vernon County are invalid.

(c) An injunction against the Town of Wheatland instructing it not to represent to anybody that there is a public road on the Plaintiffs' property, and to take reasonable steps to correct any and all Town generated maps.

(d) An injunction against the Town of Wheatland and Vernon County from continuing its efforts to foreclose on Plaintiffs' property and to enter into a reasonable plan with the Plaintiffs for the correction of the amount of property taxes owed (if any) and the payment thereof.

(e) Damages, including compensatory and punitive damages.

(f) Award the Plaintiffs their costs, interest and reasonable attorneys' fees for this action pursuant to 42 U.S.C. §1988 and other relevant statutes; and,

(g) Order such other and further injunctive relief as the Court deems just and proper under the circumstances.

Dated this 15th day of September, 2022.


EMINENT DOMAIN SERVICES, LLC

*/s/ Andrew D. Weininger*

Andrew D. Weininger
WI SBN: 1084096
andrew@eminentdomainservices.com

6515 Grand Teton Plaza, Ste 241
Madison, WI 53719
(608) 535-6109 tel
(608) 338-0889 fax