IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

THOMAS GHELF, TRICIA HANSEN,
CONSTANCE KLEIN, THOMAS KLEIN,
MAUREEN SOMMERFELD, and MISSISSIPPI
SPORTS AND RECREATION, INC.,

                    Plaintiffs,

    v.

TOWN OF WHEATLAND, JAYNE BALLWAHN,
ROBERT STREETER, DON WILLIAMS,
VERNON COUNTY, KAREN DeLAP, and
DOE DEFENDANTS 1-20,

                    Defendants.

OPINION AND ORDER

22-cv-530-wmc

Plaintiffs Thomas Ghelf, Tricia Hansen, Maureen Sommerfeld, Constance and Thomas Klein, and Mississippi Sports and Recreation, Incorporated ("MSR") are all interrelated and own abutting properties in the Town of Wheatland in Vernon County, Wisconsin.  Plaintiffs allege that Vernon County and County Treasurer Karen DeLap ("the county defendants") and the Town of Wheatland and current and former town board members Jayne Ballwahn, Robert Streeter, and Don Williams ("the town defendants"), along with other unnamed town and county employees ("the Doe defendants"), engaged in a decades-long campaign of harassment and retaliation in violation of their constitutional rights under the Takings Clause, Equal Protection Clause, Due Process Clause, and First Amendment. More specifically, plaintiffs allege that:  town officials made baseless complaints about Ghelf and MSR that led to the county's unlawful arrest of Ghelf and MSR employees; the county and town failed to respond timely to two emergency service calls made by Ghelf and Sommerfeld; the town levied excessive property taxes that

the county has sought to collect from MSR in a foreclosure action pending in state court; and the town designated Ghelf's private driveway as a public road.

The town and county defendants have filed separate motions to dismiss, persuasively asserting a number of grounds for dismissal of this action for lack of subject matter jurisdiction and failure to state a claim, both in its entirety and as to particular claims and defendants.  (Dkt. #9 and Dkt. #12.)  The court's analysis begins with defendants' arguments challenging the court's subject matter jurisdiction over certain claims under the *Rooker-Feldman* doctrine, the Tax Injunction Act, and the *Younger* abstention doctrine, then addresses defendants' arguments on the merits of plaintiffs' remaining claims.  For the reasons explained more fully below, the court concludes it lacks subject matter jurisdiction over plaintiffs' claims regarding property tax assessments and the designation of a public road, all of which challenge or are inextricably intertwined with state court decisions that plaintiffs cannot relitigate in this court.  To that end, the court will *not* exercise jurisdiction over the pending state foreclosure action based on the tax assessments already confirmed in the state court.  The court further concludes that plaintiffs' remaining claims of harassment and retaliation are barred by the applicable statutes of limitations or a general release that some of the plaintiffs signed with the county in settling a previous federal lawsuit.  Finally, because no other, viable federal claims remain, the court will grant defendants' motions and dismiss this case in its entirety.

ALLEGATIONS OF FACT[1]

## A. Overview of Parties and Relevant Properties

The individual plaintiffs are related to one another and live on abutting properties in the Town of Wheatland in Vernon County, Wisconsin:  Thomas Ghelf and Tricia Hansen are married; Ghelf and Maureen Sommerfeld are siblings; and Constance Klein is Ghelf's daughter and Thomas Klein's wife.  Moreover, the Sommerfelds jointly own and operate Mississippi Sports and Recreation ("MSR"), which owns property consisting of four Vernon County tax parcel numbers ("the MSR property").  On the MSR property is the Ghelf/Hansen home, as well as an adult entertainment venue called "Gunner's Bar and Girls," a 50-site campground, and a boat landing with 30 slips.  Abutting the MSR property is 5.6 acres owned by Ghelf and Hansen ("the Ghelf property"), on which Ghelf's childhood home is located and Sommerfield currently resides.  Finally, the Kleins own a 1.45 acre property with a single family residence ("the Klein property") that is accessed from Highway 35.

Defendants are either current or former municipal officers:  Jayne Ballwahn is the Town Chairman of Wheatland; Robert Streeter, now deceased (dkt. #29-1), was the former Town Chairman; Don Williams is a former Town Supervisor; the Doe defendants 1-10 are agents and employees of the town; Karen DeLap is the Vernon County Treasurer; and Doe defendants 11-20 are agents and employees of the county.

---

[1] For purposes of defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court "accept[s] as true all of the well-pleaded facts in the complaint and draw[s] all reasonable inferences in favor of" plaintiff. *Jakupovic v. Curran*, 850 F.3d 898, 902 (7th Cir. 2017) (internal citation omitted).

### B.  Alleged Harassment Campaign

Plaintiff Thomas Ghelf has a long history in town politics.  From April 2007 to April 2009, he was a town supervisor along with defendant Streeter, and Ghelf's brother, Ralph, was the town chairman.  During this time period, Ghelf was hoping to contract with the county to run a campground, marina, and concession stand at Blackhawk Park.  Although defendants Streeter and Williams attempted to block Ghelf's efforts, he was awarded that contract in 2008.  Streeter and Williams then turned their sights on Ghelf's and Sommerfeld's plans to open a bar, restaurant, and banquet hall on the MSR property.  When the Ghelf brothers' town seats came up for reelection in April 2009, Streeter and Williams also ran against them, a result of which Streeter became the town chairman and Williams a town supervisor.

Shortly after that election, in August 2009, MSR decided to convert its bar, restaurant, and banquet facility to the Gunner's adult entertainment venue.  Plaintiffs allege that soon after Gunner's opened, defendants began their "harassment campaign" against plaintiffs, which included:  (1) filing various complaints about Ghelf's businesses and unlawfully arresting Ghelf and nine of his performers at Gunner's; (2) refusing to provide timely emergency services to Ghelf, Sommerfield, and their brother-in-law; (3) setting erroneous property tax assessments and instituting foreclosure proceedings against some of plaintiffs' properties for unpaid property taxes; and (4) claiming Ghelf's private driveway as a public road.  The details surrounding these actions are discussed below.

### 1.  Complaints and Arrests

Defendants Streeter and Williams, along with the De Soto Area Business

Association, filed complaints with the county and the Wisconsin Department of Justice about suspected drug sales and prostitution at Gunner's.   DOJ investigated these complaints in September 2009 but did not find evidence of illegal activity.   Nonetheless, the county sheriff's department conducted a raid during which Ghelf and nine women working as exotic dancers at Gunner's were arrested for violating the county obscenity ordinance, § 42-3.[2]

On October 30, 2015, Ghelf, MSR, and six of the exotic dancers arrested during the execution of the search warrant filed suit against the county in this court, alleging violations of their constitutional rights.   *See Brent v. County of Vernon*, case no. 15-cv-698-wmc. However, the parties reached a settlement on September 6, 2017, in which Ghelf, MSR, and the dancers agreed to dismiss the lawsuit with prejudice and generally release the county from any and all claims.  (Gen. Rel. (Dkt. #11-1).)[3]

### 2.  Denial of Emergency Services

On February 24, 2012, Ghelf's brother-in-law, Chuck Sanborn, suffered a heart attack.   The town emergency services allegedly did not respond, and the county's first responders took 45 minutes to arrive, during which time Sanborn passed away.   Numerous

---

[2] According to plaintiffs, the town's ordinance was enacted in 1978, before the Wisconsin Supreme Court's decision in *State Ex Rel. Teunas v. Kenosha County*, 142 Wis. 2d 498, 418 N.W.2d 833 (1988), holding that county governments lacked constitutional authority to enact obscenity ordinances.

[3] The general release itself is attached to the county's motion to dismiss, but the court may consider it because plaintiffs refer to that same settlement in their complaint and the release is central to their claims.  *Yassan v. J.P. Morgan Chase & Co.*, 708 F.3d 963, 975 (7th Cir. 2013) (citing *188 LLC v. Trinity Industries, Inc.*, 300 F.3d 730, 735 (7th Cir. 2002)); *Brown v. Alltran Fin., LP*, No. 18-cv-409-wmc, 2018 WL 5923772, at *2 (W.D. Wis. Nov. 13, 2018).  Moreover, plaintiffs have not opposed its consideration in response to defendants' arguments to this effect.

5

people told Sanborn's family members that the town's emergency responders did not respond because they believed Ghelf was the one having the heart attack.

In January 2016, Sommerfeld called the county sheriff's department because unruly patrons were refusing to leave Gunner's.  Ghelf and Sommerfeld were beat up, and Sommerfeld was severely injured, again because the sheriff's department allegedly failed to respond for 60-90 minutes.  Even then, none of the offending patrons were arrested or held accountable for the attack.  The sheriff's department also allegedly told Ghelf that he would ticketed for disorderly conduct if anyone at Gunner's made any future calls for assistance.  In contrast, when other residents and businesses call emergency services, the county allegedly responds promptly.

### 3.  Tax Assessments and Foreclosure Action

The town increased the property tax assessments for the parcels owned by MSR in 2009.  The assessed value for the boat landing parcel increased from $10,200 to $1,440,880, with annual taxes increasing from $205.78 to $33,067.17.  The assessed value for the parcel with Gunner's increased from $320,600 to $588,400, with taxes increasing from $6,434.38 to $12,647.83 annually.  Ghelf challenged these assessments on behalf of MSR at the 2009 town open book meeting.[4]  Although an initial board of review meeting was subsequently convened, no action was taken and the board allegedly never reconvened to address MSR's objections to the 2009 tax assessment.  Nor did MSR receive any notices

---

[4] During an open book session, the municipality's assessment roll is open for examination, and the property owner can informally discuss the property value with the local assessor.  *See* Wis. Stat. § 70.45; Wis. Dept. Rev., *2023 Guide for Property Owners*, at 19 (accessed at https://www.revenue.wi.gov/DOR%20Publications/pb060.pdf).

regarding its tax assessments or tax bills for any of its parcels in 2010 and 2011, and allegedly no board of review meeting was held for either of those years.

In 2012, Sommerfeld appeared at the open book meeting on behalf of MSR, but a board of review meeting could not take place because only one town board member was present. Nevertheless, the town's assessor, Charlotte Johnson, told Sommerfeld that she would talk to the town clerk about setting a board of review meeting to consider MSR's tax assessments for the years 2009-2012, and further, that she would recommend a reduction in the assessments because they had been based on unreliable maps. However, MSR again alleged that it received no further notices about a board of review meeting, its tax assessments, or its tax bills in 2012 or 2013.

In 2014, the Wisconsin Department of Revenue ("DOR") revoked Johnson's tax assessor license and ordered the town to make payments to correct her mistakes. Sommerfeld attended the 2014 open book meeting at which the new tax assessor allegedly agreed to adjust MSR's property tax assessments "in the fall," supposedly because there were not enough town board members present to conduct a board of review meeting. However, once again, no board of review hearing was held in 2014.

In 2015, MSR filed a petition for a writ of mandamus in the Vernon County Circuit Court, ostensibly to require the Town of Wheatland to reconvene the board of review to hear MSR's objections to its property tax assessments for 2009 through 2013. *Miss. Sports & Rec., Inc. v. Town of Wheatland*, 2017 WI App 7, 373 Wis. 2d 310, 895 N.W.2d 104

(citing Vernon Cty. Case No. 2015CV31).[5]  However, the circuit court granted the town's motion for summary judgment on the ground that MSR failed to comply with the statutory prerequisites to challenge the property tax assessments before the board of review for each of those years, and therefore, did not have a legal right to the relief.  *Id*., at ¶¶ 1-3.  The state court of appeals affirmed that decision on December 1, 2016, finding that the town presented undisputed evidence that "no one on behalf of Mississippi Sports filed a written objection to its tax assessments before or during the Town board of review meetings for 2009, 2010, 2011, 2012, or 2013 or obtained waiver of the written objection requirement at those meetings." *Id*., at ¶ 12.  Moreover, the appellate court found that MSR "presented no evidence that it filed a correct and timely written objection with the clerk of the board of review, or obtained a waiver of that requirement, at any board of review meeting between 2009 and 2013." *Id*.  The court of appeals then rejected MSR's attempts to argue for the first time on appeal that (1) it submitted a proper objection to the assessments, or (2) the board of review waived the requirement of a written objection.  *Id*., at ¶ 14.

In July 2022, the county filed a tax lien foreclosure action for unpaid property taxes in Vernon County Case No. 22CV74.  Although MSR attempted to remove that case, this court granted the county's motion to remand in December 2022.  *Vernon County v. MSR*, case no. 22-cv-590-wmc, dkt. #10.  The county, including Treasurer DeLap, has refused to correct MSR's tax assessments even though the town's tax assessor had admitted that

---

[5] Without converting a motion to dismiss or for judgment on the pleadings into a motion for summary judgment, the court may also take judicial notice of matters in the public record, including previous court documents and proceedings.  *Fosnight v. Jones*, 41 F.4th 916, 922 (7th Cir. 2022); *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997).

they were incorrect.  In a more recent filing, however, the county defendants advised this court that the circuit court has stayed all further foreclosure proceedings related to the MSR property pending the resolution of the lawsuit in this court.  (Dkt. #36.)

### 4.  Declaration of Private Driveway as Public Road

Running through the Ghelf property from Highway 35 to the properties owned by MSR and the Kleins is a private driveway with a commercial permit.  Some maps show the Klein property as located on "Pennel Lane," but that road is allegedly at the southern end of the private driveway maintained by Ghelf.  On some maps, the northern portion of the driveway is identified as Ghelf Road, and the southern portion is identified as Pennel Lane.  Moreover, since owning the property, the Ghelfs have allegedly maintained the driveway, not the town or county.

Still, the town has apparently maintained that the private driveway running through plaintiffs' properties is a public road, and it owns a right-of-way on a portion of Ghelf's and Hansen's property.  At Ghelf's request, Sergeant Bruce Olson of the Vernon County Sheriff's Department performed an investigation and determined that the town failed to follow proper procedure when it attempted to ratify the driveway as Pennel Lane in 2012.  In a letter dated September 18, 2018, Olson stated that "[i]t would be the opinion of the Sheriff's Office that, in the absence of any supporting documents to support the contrary, the road segment now called 'Pennel Road' is a private road simply because the legal and proper procedure was not followed by the Town of Wheatland."  (*See* Olson ltr. attached to cpt. (dkt. #1-1).)

On July 23, 2020, the town passed a resolution validating Pennel Lane as a public road.  Ghelf and MSR filed a petition for certiorari review in the Vernon County Circuit Court on August 21, 2020, seeking an order invalidating the resolution.  (*See* Pet. for cert., dkt. #16-1).  However, the circuit court dismissed the petition for plaintiffs' failure to exhaust their administrative remedies.  (*See* Jan. 19, 2021 Ord., dkt. #16-2.)  Ghelf and MSR did not appeal that decision.

**C. Current Claims**

Plaintiffs have asserted six constitutional claims, alleging the following injuries arising from defendants' actions over a period of more than 10 years:

- Between 2007 and 2009, town defendants Streeter and Williams organized a community effort to bring meritless administrative, criminal, and regulatory complaints to shut down Gunner's and other business interests of Ghelf, Sommerfeld and MSR, which lead to the county sheriff's department's arrest of Ghelf and nine of his employees in December 2009.  Plaintiffs generally allege that these actions supported and led to the takings, due process, and retaliation violations described below.

- From 2009 to 2014, the town levied incorrect and excessive property taxes on the MSR property and the county brought a foreclosure action in 2022 to collect these taxes, which constitutes a constructive taking in violation of the Fifth and Fourteenth Amendments, retaliation for plaintiffs exercising their First Amendment right to open an adult entertainment venue on the property, and deprivation of substantive due process under the Fourteenth Amendment.

- In 2012 and 2016, the town and county defendants failed to provide plaintiffs or their relatives with emergency services in violation of the Due Process and Equal Protection Clauses and in retaliation for plaintiffs' exercise of the First Amendment right to open an adult entertainment venue.

- In 2020, the town defendants illegally declared Ghelf's private driveway a public road in in violation of the Takings Clause. [6]

As relief, plaintiffs seek: (1) a declaratory judgment that the MSR property taxes and interest claimed by the town and county are invalid; (2) a declaratory judgment that there is no public road over plaintiffs' property; (3) an injunction preventing the county and town from foreclosing on plaintiffs' property and requiring a reasonable plan to correct the amount of property taxes owed; and (4) compensatory and punitive damages.

## OPINION

Defendants advance several grounds for dismissal. As a threshold matter, they argue that this court lacks subject matter jurisdiction over many of plaintiffs' claims under Rule 12(b)(1). Alternatively, defendants argue this federal court should abstain from exercising jurisdiction over certain claims in light of three state court actions addressing the same or similar claims. Additionally, defendants contend that even if some or all of plaintiffs' claims are properly in federal court, the complaint fails to state any viable claim under Rule 12(b)(6). As it must, the court will first address the jurisdictional and abstention challenges, then turn to the merits of plaintiffs' claims.

## I. Subject Matter Jurisdiction

Defendants argue that the state court decisions upholding MSR's property tax

---

[6] Plaintiffs' complaint also alleges that the town passed an obscenity ordinance in 2020 and suggests that the ordinance "is likely unconstitutional as an excessive burden of first amendment expression." (Dkt. #1, at ¶ 58.) Ironically, this assertion may be the most obvious to proceed in federal court. However, the complaint does not actually challenge the validity of the ordinance, nor does it include allegations from which the court can infer that plaintiffs suffered any injury following the ordinance's passage.

assessments and declaring Ghelf's driveway as a public road deprive this court of subject matter jurisdiction over plaintiffs' related claims under either the *Rooker-Feldman* doctrine or the Tax Injunction Act.   In addition, defendants ask that this court abstain from exercising jurisdiction over plaintiffs' claims related to an ongoing, state court foreclosure action.  *See Berrada Properties Mgmt. Inc. v. Romanski*, 608 F. Supp. 3d 746, 754 (E.D. Wis. 2022) (motion to dismiss on *Younger* abstention grounds best construed as motion to dismiss under Rule 12(b)(1)).  The court finds defendants' arguments well-founded and agrees that dismissal of these claims is warranted.

### A. *Rooker-Feldman* Doctrine

The *Rooker-Feldman* doctrine "imposes a 'jurisdictional bar' that prohibits federal courts other than the Supreme Court of the United States from reviewing final state court judgments." *Hadzi-Tanovic v. Johnson*, 62 F.4th 394, 399 (7th Cir. 2023); *see also D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923). This doctrine applies generally to "cases brought by state-court losers complaining of injuries caused by state court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).  The reason underlying the doctrine is that "no matter how erroneous or unconstitutional the state court judgment may be, only the Supreme Court of the United States has jurisdiction to review it." *Brown v. Bowman*, 668 F.3d 437, 442 (7th Cir. 2012).

The *Rooker-Feldman* doctrine is limited to federal claims that "'directly' challenge a state court judgment or are 'inextricably intertwined with one,'" *Andrade v. City of*

*Hammond*, 9 F.4th 947, 950 (7th Cir. 2021) (quoting *Swartz v. Heartland Equine Rescue*, 940 F.3d 387, 391 (7th Cir. 2019)), **provided that** "plaintiff[s] had a reasonable opportunity to raise the [federal] issue in state court proceedings," *Hadzi-Tanovic*, 62 F.4th at 399 (quoting *Jakupovic v. Curran*, 850 F.3d 898, 902 (7th Cir. 2017)).  The relevant inquiry in determining whether plaintiffs' claims are inextricably intertwined with a state court judgment is whether plaintiffs allege an injury "caused by the state court judgment." *Hadzi-Tanovic*, 62 F.4th at 399 (citing *Sykes v. Cook County Circuit Court Prob. Div.*, 837 F.3d 736, 742 (7th Cir. 2016)) ("Put another way, we ask 'whether the district court is essentially being called upon to review the state court decision.'").  If not, and the plaintiffs' alleged injury is independent of the judgment, then *Rooker-Feldman* does not bar federal court jurisdiction.  *Id*.; *Andrade*, 9 F.4th at 950.

As explained above, there are two state court judgments that are challenged or "inextricably intertwined" with plaintiffs' claims:  (1) the state court judgment entered and affirmed on appeal against MSR, definitively ruling that MSR had no legal right to contest the validity of its 2009 through 2013 property tax assessments because it had failed to comply with statutory prerequisites for raising such a challenge; and (2) the 2021 dismissal of Ghelf and MSR's petition for certiorari review of the town's public road resolution on the ground that they failed to exhaust their administrative remedies.  However, plaintiffs contend their takings, substantive due process, and First Amendment retaliation claims stand independent of these state court actions because they are based on broader allegations of harassment that defendants undertook *before* these state court proceedings. *See Andrade*, 9 F.4th at 950-51 (defendants' challenged conduct of defying subpoena and

providing false testimony before municipal board was an independent, past injury that state court failed to remedy in affirming board's decision to require plaintiff to repair or vacate unsafe apartment building); *Dorce v. City of New York*, 2 F.4th 82, 104 (2d Cir. 2021) ("Plaintiffs are permitted to seek damages for injuries caused by a defendant's misconduct in procuring a state court judgment, but not for injuries directly caused by that judgment.").   In particular, plaintiffs argue that they are seeking to hold defendants accountable for past interference with plaintiffs' personal, business and property interests, which included unfounded criminal and civil complaints, the failure to provide timely emergency services, the assessment and attempted collection of excessive and erroneous property taxes, and the designation of Ghelf's private driveway as a public road.

However, "plaintiff[s] may not circumvent the effect of the *Rooker-Feldman* doctrine simply by casting [their] complaint in the form of a federal civil rights action."  *Remer v. Burlington Area School District*, 205 F.3d 990, 997 (7th Cir. 2000).  Specifically, the fact that plaintiffs' claims encompass other types of harassment not addressed by state court actions upholding property tax assessments or a town public road resolution does not prevent application of the *Rooker-Feldman* doctrine.  Rather, this court has the discretion to find some claims barred by the doctrine, while allowing other claims to proceed.  *See Crawford v. Countrywide Home Loans, Inc.*, 647 F.3d 642, 645-47 (7th Cir. 2011) (affirming district court's finding that two of twenty-two claims were barred by the *Rooker-Feldman* doctrine).

Here, plaintiffs impermissibly seek a review of the state court judgments holding that plaintiffs forfeited their right to challenge (1) the 2009-2014 MSR property tax

assessments and (2) the town's designation of a public road over Ghelf's property.  Indeed, they expressly request that this court declare both the tax assessments and public road resolution invalid.  Thus, any finding by this court in favor of plaintiffs would contradict and set aside the state court judgments, which is exactly what *Rooker-Feldman* says lower federal courts cannot do.  *See Bauer v. Koester*, 951 F.3d 863, 866 (7th Cir. 2020) (lawsuit is barred by *Rooker-Feldman* doctrine if "any finding in favor of [plaintiffs] would require [the federal court] to contradict the state court's orders"); *Taylor v. Federal Nat. Mortg. Ass'n*, 374 F.3d 529, 533-34 (7th Cir. 2004) (claims not independent of state court foreclosure suit for *Rooker-Feldman* purposes where plaintiff alleged that defendants "committed a fraud upon [that] court by instituting a wrongful foreclosure action against her").

Moreover, the fact that state courts dismissed plaintiffs' petitions on procedural grounds for failure to exhaust administrative remedies and comply with statutory prerequisites does not make *Rooker-Feldman* inapplicable.  *See Harold v. Steel*, 773 F.3d 884, 887 (7th Cir. 2014) ("Unless *Rooker* were to be overruled, there could not be a 'procedural exception' to the *Rooker-Feldman* doctrine."); *Qualters v. Town of Winchester*, No. 2005 DNH 014, 2005 WL 300058, at *3 (D.N.H. Feb. 9, 2005) (applying *Rooker-Feldman* even though plaintiff procedurally defaulted claim in state court).  In order to determine that the tax assessments and the designation of the public road are invalid, this court would be forced to find that the state court -- which could have evaluated the validity of either action -- erred in holding that plaintiffs had forfeited their right to bring those challenges.

Therefore, plaintiffs' claims related to MSR's tax assessments and the town's public road resolution will be dismissed under *Rooker-Feldman*.

Finally, as the parties' recognize, the *Rooker-Feldman* doctrine is not directly applicable to the foreclosure proceedings because the circuit court has not yet entered a judgment in that case.  However, the county is seeking foreclosure as a means to collect unpaid property taxes upheld by the Wisconsin Circuit Court and Court of Appeals. Indeed, in its motion to stay the state court foreclosure proceedings, MSR argued that "[i]f MSR prevails in the Federal Lawsuit, it will likely result in the tax assessments and interest claimed in this matter being declared illegal and void."  (Dkt. #36-1, at ¶ 7.)  Accordingly, this court cannot enjoin the foreclosure action or find it unconstitutional without undoing the underlying decision of the state court as to these tax assessments.  Moreover, even though the *Rooker-Feldman* doctrine may not apply to the county's state court efforts to collect unpaid taxes, this court finds that the Tax Injunction Act, comity concerns and the *Younger* abstention doctrine further preclude any action it might take with respect to the foreclosure action for all the reasons discussed below.

### B.  Tax Injunction Act

This court's subject matter jurisdiction over claims for declaratory and injunctive relief related to the assessment and collection of property taxes is precluded by the Tax Injunction Act, 28 U.S.C. § 1341, which states that "district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State."  *See Scott AFB Props., Ltd. Liab. Co. v. Cty. of St. Clair, Ill.*, 548 F.3d 516, 520 (7th Cir. 2008) (The Act

"divests the district courts of subject matter jurisdiction in 'cases in which state taxpayers seek federal-court orders enabling them to avoid paying state taxes.'") (citing *Hibbs v. Winn*, 542 U.S. 88, 107 (2004)). The Act "applies to any state tax, including municipal and local taxes," "is not confined by the law under which a state tax is challenged," and "strips the district courts of the power to hear suits seeking not only injunctive but also declaratory relief from state taxes." *Id*. ("[E]ven federal constitutional claims do not render the Act inapplicable.") (internal citations omitted).

In this respect, Wisconsin Stat. Chs. 70 and 74 provide a comprehensive scheme for challenging property tax assessments, which the state court determined that MSR did not follow. *Hermann v. Town of Delavan*, 215 Wis. 2d 370, 379-83, 572 N.W.2d 855, 858-59 (1998) (holding that the three forms of appeal in Wis. Stat. §§ 70.47(13), 70.85, and 74.37 are exclusive methods to challenge property tax assessments, which are available only to property owner "who files an objection with the board of review"). Further, federal courts have repeatedly held that Wisconsin's processes for challenging tax determinations and foreclosures meet the requirement for a plain, speedy, and efficient state court remedy. *E.g., Darne v. State of Wis., Dep't of Revenue*, 137 F.3d 484, 490 (7th Cir. 1998); *Owens v. Tassler*, No. 18-cv-772-jdp, 2020 WL 7466086, at *3 (W.D. Wis. Dec. 18, 2020); *Domínguez-Schugt v. Wisconsin*, No. 18-cv-231-jdp, 2019 WL 764611, at *1 (W.D. Wis. Feb. 21, 2019).

Nevertheless, plaintiffs argue that MSR did not have a "plain, speedy, and efficient remedy" because the town engaged in a scheme to circumvent its efforts to challenge tax assessments by: (1) not convening the board of review in 2009 or 2012; and (2) not sending

17

MSR any notices related to property taxes in between 2010 and 2014.  The problem with this attempted end around is that MSR *had* an opportunity to raise these issues in the state circuit court but manifestly failed to do so.  Indeed, the state court of appeals found that MSR presented *no* evidence in response to the county's argument that it failed to comply with administrative prerequisites before filing the petition and rejected MSR's attempts to argue for the first time on appeal that it had submitted a proper objection or obtained a waiver.  *See Miss. Sports & Rec., Inc.*, 2017 WI App 7, at ¶ 14 ("The time for a party to create an issue of fact is in response to a motion for summary judgment, not afterwards."). Because plaintiffs had a plain, speedy, and efficient remedy to challenge the tax assessments but failed to utilize it, this court neither has jurisdiction to consider plaintiffs' claims for declaratory and injunctive relief as they relate to the tax assessments nor over any resulting foreclosure action to collect that debt.

Finally, although plaintiffs also seek compensatory and punitive damages, federal district courts are generally directed to abstain from considering claims for damages over related state tax claims. *See Fair Assessment in Real Estate Ass'n, Inc. v. McNary*, 454 U.S. 100, 115-16 (1981) ("We consider such interference [into state operations] to be contrary to the scrupulous regard for the rightful independence of state governments which should at all times actuate the federal courts.") (internal citation omitted); *A.F. Moore & Assocs., Inc. v. Pappas*, 948 F.3d 889, 896 (7th Cir. 2020) (same).  Thus, comity requires taxpayers seeking damages to pursue relief in state courts, assuming that state-court remedies are "plain, adequate, and complete," as they are here.  *Fair Assessment in Real Estate*, 454 U.S. at 116.

18

### C. *Younger* Abstention

Even if not barred by the Tax Injunction Act, similar principles of comity, equity and federalism are called for under the *Younger* abstention doctrine. Specifically, a federal court must abstain from taking jurisdiction over federal constitutional claims that seek to interfere with or interrupt ongoing state proceedings implicating important state interests. *Younger v. Harris*, 401 U.S. 37, 45 (1971); *SKS & Assoc. v. Dart*, 619 F.3d 674, 677 (7th Cir. 2010); *see also Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 14 (1987) ("Not only would federal injunctions in such cases interfere with the execution of state judgments, but they would do so on grounds that challenge the very process by which those judgments were obtained."). "Situations in which *Younger* abstention is appropriate include those in which there is an ongoing state proceeding that is judicial in nature, involves important state interests, provides the plaintiff an adequate opportunity to raise the federal claims, and no exceptional circumstances exist." *Ewell v. Toney*, 853 F.3d 911, 916 (7th Cir. 2017) (internal citation omitted).

The conditions for *Younger* abstention are satisfied in this case. The ongoing tax foreclosure action filed by the county is both judicial in nature and involves important state interests. *Gintner v. Schira*, No. 21-cv-224-wmc, 2022 WL 4446366, at *1 (W.D. Wis. Sept. 23, 2022) (finding same). It also provides plaintiffs with an opportunity to raise their constitutional challenges. *Terry v. Kolski*, 78 Wis. 2d 475, 496, 254 N.W.2d 704, 712 (1977) ("[C]ourts of this state have jurisdiction to hear and decide sec. 1983 cases."). Indeed, MSR asserted counterclaims in the foreclosure action that the unpaid

taxes are invalid and unconstitutional for the same reasons asserted in this lawsuit.  (MSR Answ., Vernon Cty. Case No. 22CV74, Dkt. #11-3, at 24, 37-41.)

Finally, citing two narrow exceptions to the *Younger* doctrine described in *Jacobson v. Vill. of Northbrook Mun. Corp.*, 824 F.2d 567, 569-70 (7th Cir. 1987), plaintiffs assert that abstention is inappropriate because they have an "extraordinarily pressing need for immediate equitable relief" and the county brought the foreclosure action in bad faith to harass plaintiffs.  (Dkt. #17, at 15-16.)  However, this conclusory assertion is equally unavailing.  *First*, the state court has stayed the foreclosure proceedings pending a ruling in this court, so there is no immediate risk that foreclosure will occur.  *Second*, a plaintiff asserting bad faith must allege specific facts to support an inference that the action was brought for the purpose of "retaliating for or deterring the exercise of constitutionally protected rights."  *Collins v. Kendall County*, 807 F.2d 95, 98 (7th Cir. 1986); *Shott v. Cty. of McHenry*, No. 22-cv-50075, 2022 WL 1174866, at *3 (N.D. Ill. Oct. 20, 2022) (same). Plaintiffs do not even begin to meet this stringent standard.  While asserting that the complaint "clearly alleged overwhelming facts sufficient to support the harassment and bad faith exception" (Dkt. #17, at 16), their allegations of past administrative and criminal complaints, denial of emergency services, and the levying of excessive taxes are vague, conclusory, and primarily involve conduct undertaken by town, not county officials. Moreover, as discussed above, MSR has raised its harassment concerns as counterclaims in the foreclosure action, which is where they should be addressed given the nature of their attacks on state procedures, court judgments, and tax laws.  Accordingly, this court must abstain from exercising jurisdiction over plaintiffs' claims related to both state court

20

judgments on a public road resolution and property taxes owed, as well as the county's attempt to foreclose on the related MSR tax lien.

## II.   Failure to State a Claim

Defendants argue that the remaining aspects of plaintiffs' claims alleging harassment that occurred before these state court lawsuits must be dismissed under Rule 12(b)(6) as barred by the applicable statutes of limitations and the general release that Ghelf and MSR executed with the county in 2017.[7]   Although the statute of limitations and waiver are affirmative defenses that should be raised in a motion for judgment on the pleadings under Rule 12(c), dismissal is appropriate in this case under Rule 12(b)(6) because all the facts necessary to rule on these affirmative defenses are properly before the court. *Collins v. Vill. of Palatine, Illinois*, 875 F.3d 839, 842 (7th Cir. 2017); *United States v. Rogers Cartage Co.*, 794 F.3d 854, 860 (7th Cir. 2015); *Oliver v. Jess*, No. 20-cv-1069, 2021 WL 2533508, at *1 (E.D. Wis. June 21, 2021).

### A.  Release of Claims

Pursuant to a settlement agreement entered in a previous case in this court, plaintiffs Ghelf and MSR released the county and any of its past, present, and future officials and representatives from:

> [A]ny and all manner of action or actions, cause or causes of action, suits, debts, covenants, contracts, agreements, judgments, executions, claims, demands, and expenses (including attorney's fees and costs) whatsoever in law or

---

[7] Because the court agrees the remaining claims are barred by the statute of limitations and general release, it is unnecessary to consider defendants' remaining arguments regarding issue preclusion and the plausibility of plaintiffs' claims.

> equity, whether known or unknown, which they have had, now
> have, or may have against the [county] . . . for or by reason of
> any transaction, matter, event, cause, or thing whatsoever
> occurring prior to or on [September 6, 2017], whether based
> on tort, express or implied contract, or any federal, state, or
> local constitution, law, statute, ordinance, or regulation,
> including but not limited to any and all claims arising out of
> our connected with the individual Releasing Parties' arrests by
> the Vernon County Sheriff's Department on December 18,
> 2009 and the subject matter of Case No. 15-cv-698 . . .

(Dkt. #11-1, at ¶ 4.)

The county defendants argue that this broad language unambiguously releases plaintiffs' remaining claims against the county that arose from events occurring on or before September 6, 2017, including the arrests of Ghelf and MSR's employees at Gunner's in 2009, along with the emergency service calls in 2012 and 2016.  Plaintiffs appear to concede this point as it relates to Ghelf and MSR, but argue that the settlement agreement was signed with the understanding that the unconstitutional conduct by the county against Ghelf and MSR would cease.  Since there is no such provision in the agreement itself, however, the court is unable to read it into an unambiguous, general release to the contrary. Therefore, the court agrees that the release bars any claim that plaintiffs Ghelf and MSR may have had against the county defendants for conduct occurring on or before September 6, 2017.

### B.  Statute of Limitations

Finally, Wisconsin law governs the statute of limitations for federal civil rights actions brought under 42 U.S.C. § 1983.  *See Huber v. Anderson*, 909 F.3d 201, 207 (7th Cir. 2018).  For alleged constitutional injuries that occurred before April 5, 2018, the

statute of limitations is six years and for injuries that occurred after April 5, 2018, the statute of limitations is three years. *Id.* (citing Wis. Stat. § 893.53 (2016), amended by 2017 Wis. Act 235 (eff. Apr. 5, 2018)).  Plaintiffs filed their federal court complaint on September 15, 2022, so any claim based on events occurring before September 15, 2016 or between April 5, 2018 and September 15, 2019 is time-barred.

Since all of plaintiffs' remaining claims related to various alleged actions by defendants before 2009 and their alleged failure to provide emergency services in 2012 and January 2016, they are also untimely.  While plaintiffs argue that the county's more recent initiation of foreclosure proceedings in 2022 and the town's 2020 public road resolution constitute continuing acts of harassment that bring the earlier actions within the applicable statutes of limitations, this depends on the court considering foreclosure and public road actions over which it lacks jurisdiction.  *See Olrich v. Kenosha Cnty.*, 825 F. App'x 397, 399 (7th Cir. 2020) ("[T]he continuing-violations doctrine applies only to claims necessarily comprised of a string of connected wrongful acts that, though beginning outside the limitations period, ends within the period.").

ORDER

IT IS ORDERED that:

1)  Defendants' motions to dismiss (Dkts. ##9 and 12) are GRANTED.

    a.  Plaintiffs' claims related to the tax assessments and resolution declaring a public road are DISMISSED for lack of subject matter jurisdiction.

    b.  The court ABSTAINS from exercising jurisdiction over plaintiffs' claims related to the ongoing foreclosure action in the Vernon County Circuit Court, Case No. 22CV74, pursuant to *Younger v. Harris*, 401 U.S. 37 (1971).  Those claims are DISMISSED.

    c.  Plaintiffs' remaining claims are DISMISSED for failure to state a claim upon which relief may be granted.

2)  The clerk of court is directed to enter judgment accordingly and close this case.

Entered this 8th day of November, 2023.

BY THE COURT:

/s/

_____

WILLIAM M. CONLEY
District Judge

24